**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff LAWANDA D. SMALL,
and on Behalf of the Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWANDA D. SMALL, Individually, and on Behalf of the Class, | Case No.: |
| | **CLASS ACTION COMPLAINT FOR:** |
| Plaintiff, | |
| vs. | **(1) DECLARATORY RELIEF OR JUDGMENT (CAL. CIV. CODE, §§ 1060, *ET SEQ.*);** |
| ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, a Minnesota Corporation. | **(2) DECLARATORY RELIEF OR JUDGMENT (28 U.S.C. 2801, *ET SEQ.*);** |
| Defendant. | **(3) BREACH OF CONTRACT;** |
| | **(4) UNFAIR COMPETITION (CAL. BUS. AND PROF. CODE, §§ 17200, *ET SEQ.*)** |
| | **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff LAWANDA D. SMALL, individually, and on behalf of the class defined below, makes the following allegations against Defendant ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA ("Allianz") as follows:

## I.     NATURE OF THE CASE

1.     Allianz refuses to comply with mandatory provisions of the California Insurance Code as well as California common law regulating the lapse and termination of life insurance policies.

2.     Since January 1, 2013, Allianz and other related entities have systematically and purposely failed to provide certain classes of policy owners, insureds, assignees and others, proper notices of pending lapse or termination. Allianz has refused to provide required grace periods.  It has also failed to notify thousands of policy owners of their right to designate someone to receive critical notices and information regarding life insurance, despite being required to do so on an annual basis.  All these important safeguards are required by, among other sources, California Insurance Code Sections 10113.71 and 10113.72.[1]  California law requires strict compliance with these safeguards and Allianz refuses to comply.

3.     As a result, Allianz has failed to properly administer policies, evaluate the status of payments due under policies, and pay claims to beneficiaries for policies improperly lapsed or terminated.   Indeed, thousands of policy owners and beneficiaries have lost, and continue to lose, the benefit, value and security of their life insurance; have been, and continue to be, forced into unnecessary reinstatements; and in many instances have lost all reasonable access to any insurance at all. Ultimately, Defendant has robbed thousands of their customers and beneficiaries of the investment in such policies, including policy benefits as well as the security intended to be provided from such insurance.

_____
[1] Unless otherwise stated, all references to "Section 10113.71" and/or "10113.72" refer to California Insurance Code Sections 10113.71 and/or 10113.72.  Sometimes these will be collectively referred to as "The Statutes."

4.     The injury to Allianz's customers and beneficiaries continues today, with policyholders currently paying unnecessary or inflated premiums, or unknowingly suffering under improper forced "reinstatements" which diminish the value or conditions of the policies.  And there are numerous policyholders whom Allianz told have no insurance, but whose policies are, unbeknownst to them, still in force and in some situations with benefits being owed and unpaid.

5.     The Statutes were enacted to protect Californians and others, primarily seniors and the ill, as well as the intended beneficiaries of such individuals.  The Statutes were designed to prevent or lessen the possibility of unintended or uninformed loss of valuable and necessary life insurance for just one missed payment or resulting from a policyholders' physical or mental infirmity. The Statutes were written to codify existing law regarding lapse and termination of life insurance, which required strict compliance with applicable law and policy provisions before termination takes effect. The Statutes were also intended to standardize the procedures used in all life insurance when a policyholder misses a premium payment and when an insurer attempts to apply provisions of the policy that allow for lapse and termination.  These rules are also consistent with the strong public policy to give all policy owners and insureds mechanisms to allow for secondary notices of lapse and termination and overall to prevent unintended forfeitures.

6.     The Statutes were also designed specifically to deal with the unique nature of life insurance.  When a potential claim for benefits arises, the policy owner and party responsible for payment of premiums is often the insured, and due to their death, is no longer available to explain the circumstances related to any potential lapse or termination of coverage.  The Legislature also recognized that the beneficiary is often unaware of the circumstances related to any lapse of coverage.  Rather, the insurer is fully in control of the documentation and requirements for termination of coverage.  As such, California requires strict compliance with all statutory and contractual provisions governing termination of an otherwise in-force policy

regardless of the nonpayment of premium.  In other words, no lapse or termination for failure to pay a premium is effective, and the policy remains in force even if premiums are unpaid, unless and until all statutory and contractual provisions are satisfied.

7.     Plaintiff and the deceased, Mr. Small, are victims of Allianz's failures. Plaintiff, on behalf of herself and others similarly situated brings this action to recover for the injuries and damages resulting from these violations.  Plaintiff also requests injunctive relief intended to ensure Allianz's future compliance with these important consumer safeguards and to prevent the ongoing violation of these important statutes.

## II.     PARTIES

8.     Plaintiff Lawanda D. Small is an individual.  Plaintiff is and has been a resident and citizen of California at all relevant times.   At all relevant times, Plaintiff has been a co-owner and beneficiary of the life insurance policy insuring herself and her former husband Carl Small.

9.     Defendant Allianz Life Insurance Company of North America is a Minnesota Corporation doing business in California.  It is registered to do business in California and is licensed by the California Department of Insurance to sell life insurance here in California.  Allianz is one of the largest sellers of life insurance in California by market share, having written over $216 million in life insurance premiums in California in 2018 alone.  Defendant is the insurer responsible for administering and honoring the subject policy.

## III.     JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, including under the Class Action Fairness Act.  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and is between citizens of different States.  Also, the matter or controversy is a putative class action with over 100 class members and with over $5 million in controversy.

11.     Venue is proper in the Central District of California pursuant to 28 U.S.C. Section 1391(b) through (d), because Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; does substantial business in this District; and is subject to personal jurisdiction in this District.  Plaintiff also resides in this District.

## IV.   THE ENACTMENT AND APPLICABILITY OF INSURANCE CODE SECTIONS 10113.71 AND 10113.72

12.     In 2012, after extensive and open hearings and public consideration, including with Allianz and all other major insurance companies doing business in California, the California Legislature enacted Insurance Code Sections 10113.71 and 10113.72, which instituted procedural requirements for the termination and lapse of life insurance policies.  The Statutes were written to avoid unintended forfeitures of life insurance policies primarily being suffered by the elderly and the ill.   The Legislature found that there was a significant problem in California with the elderly abruptly losing insurance because they happened to miss a premium payment despite having faithfully and timely paid for many years.

13.     Sections 10113.71 and 10113.72, in addition to other statutory provisions and laws in effect as of January 1, 2013, mandate that every life insurance policy in or governed by California law, including policies that have issued, been delivered, renewed, reinstated, converted or otherwise become subject to the jurisdiction of California, shall contain a 60-day grace period and that the policy shall remain in force during the grace period.  Cal. Ins. Code § 10113.71(a).

14.     The provisions further require that before an individual life insurance policy governed by California law is lapsed or terminated for nonpayment of premium, a 30-day written notice of pending lapse or termination must be mailed not only to the policyholder, but also to any additional person who had been designated to receive such notice, as well as any person having any interest in the policy.  Cal. Ins. Code § 10113.72(c).

15. The provisions also mandate that the insurer, on an annual basis, as well as during any application process, notify the policy owner of his or her right to designate additional notice recipients.

16. Finally, the statutes mandate that no lapse or termination is effective unless all the provisions are strictly complied with.

17. The provisions are applicable individually and severally to all life insurance policies governed by California law.

18. More specifically, Section 10113.71 reads as follows:

**§ 10113.71 Grace Period; Notice of pending lapse and termination of policy; Mailing requirement**

(a) Every life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

(b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class United Sates mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Next, Section 10113.72 says:

**§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in

addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

19.    These Statutes are regulatory in nature and contain no grandfather provisions limiting their application only to policies first issued or delivered after January 1, 2013. Rather, they apply to all policies still *in existence* as of January 1, 2013.

20.    These provisions were intended to standardize the procedures and notices used by life insurers to terminate policies.  The Statutes further codified long-standing California law and policy regarding the State's desire to protect policyholders and beneficiaries from loss of insurance resulting from the failure, e.g., to pay a single premium after years of timely payments. These provisions, individually and collectively, were intended to apply to policies in force as of January 1, 2013 and thereafter, including those policies that would come within the jurisdiction of the state and regardless of the date of any original issuance.

21.    The principal supporters of the legislation were groups representing the elderly and the retired as well as constituents dealing with health concerns. There was no substantive opposition to the legislation during its drafting.  Rather, the insurance

industry supported these new provisions and accepted that the goal and purpose of the legislation was legitimate and in the best interest of their policyholders and beneficiaries.  Prior to enactment, there was never a public or private dispute that the enactment of provisions codifying a contractual right to a 30-day written notice, a 60-day grace period, and an annual right to designate was within the proper exercise of California's regulatory authority.   Furthermore, after repeated review, it was determined that enactment of these provisions would have no substantial fiscal or economic ill effect.  It was determined that these Statutes support a strong public policy to safeguard consumers' investment in life insurance, and the safety blanket that insurance provides.

## V.    ALLIANZ'S VIOLATIONS OF LAW

22.    In 2012, Defendant was made fully aware of the drafting and enactment of these provisions.  And through its own lobbying groups and regulatory advisors, Defendant understood how and in what fashion The Statutes would apply.

23.    Despite early knowledge of the Statutes and their mandates, since January 1, 2013, Defendant has failed to comply with the Statutes.

24.    Allianz's failure to comply with these provisions has resulted in, amongst other impacts, the improper lapse, termination, and/or forced reinstatement of policies, the loss of the capacity of policyholders to be insured, the denial of actual claims, and the loss of millions, or perhaps billions, in insurance benefits that Defendant has now illegally retained. Plaintiff and her family have suffered and continue to suffer various forms of injury and loss, including injury from an improper lapse, improper requirement of reinstatement and termination, and from Defendant's failure to reinstate coverage or otherwise pay the benefits due.

25.    Plaintiff is informed and believes that the failure of Defendant to comply with these statutes as well as the resulting injuries and damages continue to this day for many Californians.

## VI.   PLAINTIFF'S POLICY, LAPSE, TERMINATION, REINSTATEMENT, AND DENIAL OF HER CLAIM

26.   In 1990, Plaintiff and her husband Carl Small purchased, from or in California, a life insurance policy (the "Policy" or "Subject Policy") from LifeUSA Insurance Company, which was later fully acquired and subsumed by Defendant, along with the Subject Policy and all of its obligations.  As of January 1st, 2013, and at all times thereafter, Defendant was responsible for all contractual and statutory obligations associated with the Policy.

27.   Plaintiff is informed and believes that a full and complete copy of the Subject Policy, Policy No. 81605, is attached as Exhibit A. The Policy was purchased in California, was issued and delivered in California, and premiums were all paid from California such that it was and continues to be governed by the laws of the State of California including but not limited to The Statutes.  The purpose of this policy was to protect Plaintiff, Mr. Small, and their young family.

28.   The value of the policy is $75,000 or more and names Plaintiff as a co-owner and beneficiary.  Under the terms of the Policy, "[w]hen the Insured dies, we will pay the death benefit in a lump sum unless you or the beneficiary choose a settlement option." See Exhibit A.  The premium payment was about $38 per month. Under the terms of the Policy all premium payments were required to be accepted "while the policy was in force."

29.   Plaintiff stayed current on the policy and faithfully paid the premiums every month for almost 30 years, and well beyond the enacting of The Statutes by the California legislature in 2013.

30.   Despite the application of California law, at no time during 2013, 2014, 2015, 2016, 2017, 2018, or 2019 did Defendant advise Plaintiff or Mr. Small in any fashion of their right to designate another recipient of important policy notices or of their right to a 30-day notice prior to any effective lapse or termination.  Rather, at various times, Defendants misstated the actual form and type of notice required by

law and the terms of the policy. Defendant also withheld and concealed from Plaintiff the right to designate and Defendant's previous failure to comply with those provisions.  Plaintiff is informed and believes that these failures were part of a general business practice of Allianz of ignoring and misapplying Sections 10113.71 and 10113.72.

31.   After making premium payments consistently for almost 30 years via bank draft, one payment was apparently missed in 2016. The policy was lapsed in August of 2016.  Plaintiff did not realize the issue at the time and Plaintiff has no record of her or Mr. Small receiving notices of any missed premium payment in 2016 or of any impending lapse or the triggering of any mandatory 60-day grace period.

32.   Prior to the filing of this suit, in 2019, Plaintiff made a claim with Allianz after the death of insured Carl Small, whom she had purchased the policy with in 1990.  At the time, Plaintiff was still unaware that there had been any problem with the subject policy or the payment of its premiums.

33.   Allianz, though, denied Plaintiff's claim citing, for the first time, a supposed lapse for nonpayment of premium.  Plaintiff then requested information regarding the lapse.  Allianz advised that it had searched for and forwarded policy notices that it claims were sent, but Allianz has produced no evidence that it completely satisfied The Statutes nor were the forwarded documents sufficient to comply with the terms and conditions of the Statutes.   Had Allianz had any such proof, it should have been produced prior to the denial of the claim.  In short, Allianz has not complied with all of the requirements of The Statutes.

34.   Plaintiff made requests for reinstatement of the policy and advised that she had not received proper notice, but Allianz refused to reinstate or reaffirm coverage.   This refusal not only further violated the Statutes but also the express terms of the policy that required acceptance of premium payments.

35.   At no point has Defendant complied with or attempted to comply with Sections 10113.71 or 10113.72 regarding the subject policy.  This termination of The

Policy not only violated the terms of the California Insurance Code, but also constituted a material breach of the contract.

36.     Defendant failed to substantially, let alone strictly, comply with any of the mandates of Sections 10113.71 or 10113.72. Due to each and every violation of these Statutes, the lapse and termination of the Policy was void and ineffective.  As such, the Policy remained in force through the insured's death and is currently in full force.  As such, benefits are owed under the terms of the policy as well as under California law.

## VII.   CLASS ACTION ALLEGATIONS

37.     Plaintiff is informed and believes that Defendant has not, since at least January 1, 2013, properly complied with the provisions of Insurance Code Sections 10113.71 and/or 10113.72. Since that time, Defendant has failed and continues to fail to provide these protections to policy owners, assignees and their beneficiaries as a matter of standard policy.

38.     Plaintiff brings this action on behalf of all members of the following proposed class:

**The Class:**

All past, present, and future owners or beneficiaries of Defendant's individual life insurance policies in force on or after January 1, 2013 and governed by Sections 10113.71 and/or 10113.72, where the policies underwent or will undergo lapse, termination, and/or reinstatement without Defendant first providing written notice of and an actual 60-day grace period, a 30-day notice of pending lapse and termination, and/or an annual notice of a right to designate at least one other person to receive notice of lapse or termination of a policy for nonpayment of premium.

39.     Subject to additional information obtained through further investigation and discovery, the foregoing class definition may be expanded or narrowed by amendment or amended complaint or at the time of moving for class certification. Specifically excluded from the proposed Class is the Judge assigned to this action, and any member of the Judge's immediate family.

40.     Defendant's conduct has imposed a common injury and/or harm on all class members. Defendant has acted, and has refused to act, on grounds generally applicable to the class members, which makes final injunctive relief with respect to each claim as a whole appropriate.

41.     Plaintiff will and does faithfully represent, and is a member of the Class.

42.     ***Numerosity.***   The members of the Class are so numerous that their individual joinder is impracticable.   Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains thousands and perhaps tens-of-thousands of members.   The precise number of members is unknown to Plaintiff.   The true number of members is known or ascertainable by Defendant, as are their identities.   Thus, Class members may likely be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

43.     ***Existence and Predominance of Common Questions and Answers of Law and Fact***.   There is a well-defined community of interest in the questions and answers of law and fact involved affecting class members.   The questions and answers of law and fact common to the class predominate over questions and answers affecting only individual class members, including, but not limited to, the following:

a.     Whether Sections 10113.71 and 10113.72, in whole or in part, apply to Defendant's life insurance policies.

b.     Has Defendant violated and does it continue to violate the provisions of Sections 10113.71 and 10113.72?

c.     Whether Defendant's life insurance policies have been ineffectively lapsed or terminated or subsequently been unnecessarily modified through reinstatement.

d.     Whether Defendant is required to provide grace periods, timely and proper written notices of pending lapse or pending termination, and to provide policyholders a right to designate as set forth in Section 10113.72.

11
CLASS ACTION COMPLAINT

e.     Should the Court invalidate improper lapses, terminations, and/or reinstatements of policies that resulted from Defendant's failure to comply with the Insurance Code?

f.     Should Defendant be required to make payments to beneficiaries of Policies where the insured has died and the policy was lapsed or terminated in violation of Sections 10113.71 or 10113.72?

44.     ***Typicality.***  Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and each member of the Class were victims of the same statutory violations.  Further, Plaintiff's claims are typical of the claims of her fellow Class members, which all arise from the same operative facts involving the Defendant's unlawful violations of Sections 10113.71 and 10113.72.

45.     ***Adequacy of Representation.***  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair insurance business practices, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no interest adverse or antagonistic to that of the Class.

46.     ***Superiority***.  A class action is a superior method for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendant.  It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefit of adjudication of these issues in a single proceeding, economies of scale, and comprehensive

supervision by a single court, and presents no unusual management difficulties under the circumstances. Moreover, many Class members remain unaware of their rights and without this Class action, would remain unaware of their rights and benefits.

47.     In the alternative, the Class may also be certified because:

(a)     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)     The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

48.     Unless the Class is certified, Defendant will retain monies received because of its conduct taken against the class members and Plaintiff.  Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and members of the Class will continue to be harmed.

49.     Plaintiff knows of no difficulty likely to be encountered in the management of this litigation that would preclude its maintenance as a Class Action. Because the action is brought as a Class Action, the Court need only apply a single set of California laws as they relate to Defendant's violation of Sections 10113.71 and 10113.72.

50.     Plaintiff has incurred, and will incur, expenses for attorney's fees and costs in bringing this action.  These attorney's fees and costs are necessary for the

prosecution of this action and will result in a benefit to each of the members of the class.

## VIII.  <u>FIRST CAUSE OF ACTION</u>

### FOR DECLARATORY JUDGMENT OR RELIEF
#### (CAL CIV. CODE § 1060 *ET SEQ.*)

**(By Plaintiff, individually and on Behalf of the Class)**
**(Against all Defendants)**

51.     Plaintiff incorporates by reference each and every allegation contained above.

52.     Under California law, "[a]ny person interested under a written instrument…or under a contract, or who desires a declaration of his or her rights or duties with respect to another…may, in cases of an actual controversy relating to the legal rights and duties of the respective parties," may maintain a complaint or cross complaint "for a declaration of his or her rights and duties."  Furthermore, he or she "may ask for a declaration of rights or duties, either alone, or with other relief, and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time."  (Cal. Civ. Code § 1060.)

### A.     Basis for Relief

53.     On January 1, 2013, the California Insurance Code was amended by Sections 10113.71 and 10113.72. The provisions of The Statutes were immediately, and thereafter, read into all in-force policies regardless of the date of issuance.

54.     These statutes and amendments to the California Insurance Code were intended to and do regulate the lapse and termination procedures arising from the nonpayment of premiums which may occur from the date of enactment and thereafter.

55.     The amendments were not intended to relieve or waive a policyholder's continuing obligation to pay premiums but operated to keep the policy in force until the policy was properly lapsed or terminated consistent with the statutory provisions which were incorporated into the terms of the policy by law.  Each of these statutory requirements were intended to stand alone.

56.     Forfeiture provisions for nonpayment of premium for life insurance policies are strictly construed against lapse or termination and California law disfavors forfeiture of insurance. Forfeitures "are often the means of great oppression and injustice" and "the courts should be liberal in construing the transaction in favor of avoiding a forfeiture." (*Ins. Co. v. Norton* (1978) 96 U.S. 234, 242.) "Forfeiture of a policy will be avoided on any reasonable showing." *Klotz v. Old Line Life Ins. Co. of Amer.,* 955 F.Supp. 1183, 1188 (N.D. Cal. 1996).

**B.     There is an Actual Controversy Requiring a Declaration of Rights and Duties**

57.     An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties under the California Insurance Code and the Policy.  Plaintiff contends Sections 10113.71 and 10113.72 apply to the Subject Policy as well as all of Defendant's California life insurance policies in force as of or after January 1, 2013, including any policies that were renewed in California on or after January 1, 2013.  Plaintiff also contends these Statutes govern the manner and procedure in which life insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter.   Defendant contends and acts as if the Statutes do not apply to these policies.

58.     Plaintiff desires a judicial determination of rights and duties, and a declaration or judgment that Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Defendant's California policies in force as of or at any time after January 1, 2013, including the Subject Policy.

59.     A judicial declaration would advise insureds and their beneficiaries like Plaintiff of their rights, and would advise Defendant of its duties to Plaintiff and to Class members concerning policyholders' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of, and the ability to properly utilize, the legally required grace period.  A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained,

to determine whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

## IX.   SECOND CAUSE OF ACTION

### FOR DECLARATORY JUDGMENT OR RELIEF (FEDERAL DECLARATORY JUDGMENT ACT – 28 U.S.C. §§ 2201, *ET SEQ.*)

### (By Plaintiff, individually and on Behalf of the Class and Sub-Class) (Against all Defendants)

60.    Plaintiff incorporates by reference each and every allegation contained above.

61.    Under federal law, "[i]n a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment and shall be reviewable as such."  (28 U.S.C. 2201; Fed. Rule Civ. Proc., Rule 57).

62.    Here, an actual controversy has arisen and now exists between Plaintiff and Defendant within this Court's jurisdiction concerning the parties' respective rights, duties, and legal relations under the California Insurance Code and the Policy. Plaintiff contends Sections 10113.71 and 10113.72 apply to the Subject Policy and all of Defendant's California life insurance policies in force as of or after January 1, 2013, including any policies that were renewed in California on or after January 1, 2013.  Plaintiff also contends these Statutes govern the manner and procedure in which life insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter.  Defendant contend and acts as if Sections 10113.71 and 10113.72 do not apply to many categories of their policies, such as Plaintiff's Policy.

63.    Plaintiff hereby seeks a judicial determination of rights and duties, and a declaration or judgment that Sections 10113.71 and 10113.72 applied as of January

1, 2013, to Defendant's California policies in force as of or at any time after January 1, 2013, including Plaintiff's Policy.

64.    A judicial declaration would advise insureds and their beneficiaries like Plaintiff of their rights, and would advise Defendant of its duties to Plaintiff and to Class members concerning policyholders' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of, and the ability to properly utilize, the legally required grace period.  A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

## X.    THIRD CAUSE OF ACTION

## BREACH OF CONTRACT

### (By Plaintiff, Individually and on Behalf of the Class)
### (Against all Defendants)

65.    Plaintiff incorporates by reference each and every allegation contained above.

66.    Defendants breached and continue to breach the express terms of their life insurance policies, including Plaintiff's Policy, as well as the statutory mandates regarding such policies, by, amongst other things:

(a)    Failing to include in such policies and failing to provide a 60-day grace period for purposes of payment of premiums and lapse and termination of coverage for nonpayment of premium;

(b)    Lapsing and/or Terminating policies before expiration of the 60-day grace period;

(c)    Failing to include in such policies and failing to provide accurate 30-day written notice of pending lapse or termination;

(d)      Failing to provide proper notice to policyholders on an annual basis of the policyholders' right to designate individuals to receive notices of pending lapse or termination;

(e)      Lapsing or terminating policies without strictly complying with the terms of the policies;

(f)      Refusing to pay benefits to beneficiaries, despite knowledge and information that Defendants had not strictly complied with the terms of the policies;

(g)      Improperly requiring reinstatement of policies that had not lapsed or terminated and which were not required or were not subject to reinstatement;

(h)      By failing to pay benefits or claims;

(i)      By failing to provide the notices required by the policy; and

(j)      By failing to apply the applicable law to the insurance contract.

67.      Under the terms of this Policy and consistent with laws of California, Plaintiff was entitled to sufficient written notice and sufficient grace periods prior to the effectuation of any lapse or termination for non-payment.  Allianz did not provide all required protections and, thus, breached the insurance contract by failing to provide these mandatory safeguards.

68.      Allianz also failed to pay the benefits due under these policies and thereby breached the express term of the policy where Allianz promised to pay the benefits owed.

69.      All the aforementioned conduct, individually and collectively, constitutes material unexcused breaches of the policies.  To the extent any contractual obligations, duties, or conditions are imposed on policyholders or on beneficiaries, those obligations, duties, and conditions have been waived and/or have been excused due to Defendant's material breaches. After each material breach, each policy owner was thus excused from the further tendering of premiums and from any further

performance under the terms of the policy, including but not limited to the acceptance of any offer by Allianz of any reinstatement or modification to the policy.

70.     Defendant's conduct caused injury upon the false, wrongful and inadequate termination of coverage devaluing the policy and subsequently caused injury in fact through the further denial of an ability to resume coverage, and ultimately in refusing to pay the claim.  Plaintiff and her fellow class members suffered harm through the loss of coverage, the loss of peace of mind related to the existence of coverage, and the capacity to utilize the years of investment in the wrongfully lapsed and terminated policy.

71.     To the extent any policyholders and/or beneficiaries have failed to comply with any payment conditions or other conditions for the continuation of insurance, Defendants are estopped to assert such conditions due to their conduct and material breaches.   Yet, Defendants have done so with respect to Plaintiff and members of the Class and sub-class.

72.     In California, the measure of damage for material breach of a life insurance policy is set as the "sum or sums payable in the manner and at the times as provided in the policy to person entitled thereto."  Cal. Ins. Code § 10111.

73.     As a legal and proximate result of the conduct described herein, the class and sub-class have suffered direct and foreseeable economic damages, including loss of policy benefits, and allowed interest under the terms of the policy and the law, in a nature and amount to be proven at the time of trial.

## XI.     <u>FOURTH CAUSE OF ACTION</u>

### UNFAIR COMPETITION (CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ.*)

### (By Plaintiff, individually and on Behalf of the Class) (Against All Defendants)

74.     Plaintiff incorporates by reference each and every allegation contained above.

75.    California Business and Professions Code Sections 17200, *et. seq.* ("UCL") prohibit any unlawful, unfair, deceptive, or fraudulent business practice.

76.    Defendants committed "unlawful" acts under the UCL by violating and continuing to violate Sections 10113.71 and 10113.72, including by failing to afford insureds, including Plaintiff, the requisite grace periods and notices.

77.    Plaintiff's policy as well as Policies which have allegedly been lapsed and/or terminated are still in force and are payable or subject to continuation of insurance.   Because of Allianz's violations of the California Insurance Code, Allianz's attempted terminations or lapses of policies like the Subject Policy were illegal and ineffective.  The policies, in other words, remain in force and subject to payment of the benefit. Allianz's failure to comply with the statutory terms has not effectively terminated any policy, and Plaintiff and her fellow class members all remain in an ongoing valid contractual relationship with Allianz.

78.    Allianz's unlawful practices also included and continue to include Defendant's ongoing concealment that Sections 10113.71 and 10113.72 apply to a class or classes of life insurance in force on or after January 1st, 2013.  Defendant continues to conceal and mislead the policyholders and beneficiaries of the existence of a right to proper notices and grace periods, as well as the provisions of these statutes that mandate strict compliance with these provisions before any effective lapse or termination occurs.  Defendant has failed and continues to fail to explain to the policyholders and beneficiaries that a life insurance policy in force on or after January 1st, 2013 cannot be effectively terminated until strict compliance with all provisions of the insurance provisions, and that without such strict compliance the policy remains in force.

79.    Moreover, Allianz has committed deceptive acts under the UCL by affirmatively and erroneously telling class members, like Plaintiff, that their policies had grace periods of less than 60 days and/or that their policies have lapsed or

terminated.  The truth is that the policies had grace periods of at least 60 days and the policies had *not* actually lapsed or terminated.

80.    The unlawful and unfair business practices described above have proximately caused harm and injuries to Plaintiff, the class, and to the general public in the form of lost money and property.  The money lost by the class includes the policy benefits that Allianz is withholding as well as the premiums that it wrongfully collected.

81.    Pursuant to California's UCL, Plaintiff, the general public, and the members of the Class are entitled to restitution of the money or property acquired by Defendant by means of such business practices, in amounts yet unknown, but to be ascertained at trial.  Examples of this lost money acquired illegally by Defendant include un-refunded premiums, withheld benefits, and diminution of value of policies.

82.    Defendant continues to this day to ignore or otherwise violate The Statutes, continuing to rob owners and beneficiaries, like Plaintiff, of their lawfully owned policies and benefits.  As such, and pursuant to California's UCL, Plaintiff and the members of the class and the general public are also entitled to injunctive relief, including public injunctive relief, against Defendant's ongoing business practices.

83.    If Defendant is not enjoined from engaging in the unlawful business practices described above, Plaintiff, the class, and the general public will be irreparably injured.

84.    Plaintiff, the general public, and the members of the class have no plain, speedy, and adequate remedy at law.

85.    Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

86.     Private enforcement of these rights is necessary as no public agency has pursued enforcement and the interests Plaintiff seeks to protect are for the benefit of the general public.  Plaintiff is therefore entitled to an award of attorneys' fees and costs of suit pursuant to, among others, California's UCL, the Common Fund doctrine, the Public Benefit Doctrine, and California Code of Civil Procedure Section 1021.5.

## XII.   PRAYER FOR RELIEF

Plaintiff prays for relief against Defendant as follows:

1. For certification of this action as a Class Action;

2. A declaration of Plaintiff's and the Class' rights pursuant to the insurance policies issued by Defendant and a declaration that Defendant has violated The Statutes;

3. For an injunction to issue against Defendant stopping and remedying the ongoing violation of The Statutes, including public injunctive relief;

4. For economic damages according to proof where available;

5. Fore restitution where available;

6. For interest where available;

7. For attorneys' fees and all litigation costs and expenses where available; and

8. For such other and further relief as this Court deems just and proper.

## XIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

Respectfully submitted:

DATED:   February 27, 2020              **NICHOLAS & TOMASEVIC, LLP**

By:     */s/ Craig Nicholas*
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)

22
CLASS ACTION COMPLAINT

1

Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
2
Email: smarkley@nicholaslaw.org

3

**WINTERS & ASSOCIATES**
4
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
5
Sarah Ball (SBN 292337)
Email: jackbwinters@earthlink.net
6
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com
7

Attorneys for Plaintiff Lawanda D. Small
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# APPLICATION FOR LIFE INSURANCE

**PART 1** ▮▮▮▮▮▮▮▮▮▮

**Life USA® Insurance Company**
Box 59060
Minneapolis, Minnesota 55459-0060

Questions 1 through 12 relate to:
- ☒ Proposed Insured under individual policy
- ☐ Proposed Insured under juvenile policy

Questions 1a through 11a relate to:
- ☒ Spouse of Insured in Family Rider applied for
- ☐ Other Proposed Insured(s)/Spouse under Other Insured Rider

**NAME**

CARL  L  SMALL
FIRST

**1a. NAME**

LAWANDA D SMALL
FIRST

**SOCIAL SECUR**

**2a. SOCIAL SECURITY NL**

**RESIDENCE ADDRES** (Give No., Street, City, St. Zip)

**3a. RESIDENCE ADDRESS** (Give No., Street, City...)

Telephone No. Bus.
Res.
Best Time To Call  1 Pm  Where  Res

Telephone No. Bus.
Res.
Best Time To Call  4 Pm  Where  Res

| SEX | 5. DATE OF BIRTH  AGE |
|---|---|
| ☒ Male  ☐ Female | |

| 4a. SEX | 5a. DATE OF BIRTH  AGE |
|---|---|
| ☐ Male  ☒ Female | |

HEIGHT  6 Ft. 1 In.  WEIGHT 165 Lbs.  **7. PLACE OF BIRTH**  L.A. CA.

**6a.** HEIGHT 5 Ft. 4 In.  WEIGHT 150 Lbs.  **7a. PLACE OF BIRTH**  N. Carolina

**OCCUPATION** (Industry & Duties)

How Long in this occupation?  10 Yrs
Name of Employer
Address

**8a. OCCUPATION** (Industry & Duties)

How Long in this occupation?  4 Yrs
Name of Employer
Address

**NAME AND FACE AMOUNT OF PLAN APPLIED FOR**  ▮▮▮▮ Home Plan Plus 75,000

**9a. CLASS OF RISK APPLIED FOR**
- ☒ SMOKER  ☐ NON-SMOKER  ☐ PREFERRED

**0. CLASS OF RISK APPLIED FOR**
- ☒ SMOKER  ☐ NON-SMOKER  ☐ PREFERRED

**1. ADDITIONAL BENEFITS BY RIDER** Proposed Insured
- ☐ Waiver of Monthly Deductions (include all riders)
- ☒ Waiver of Planned Premium
- ☐ Accidental Death $ _____ Face Amount
- ☐ Disability Income $ _____ Monthly Income
- ☐ Gtd. Insurability $ _____ (Max. Face Amount)
- ☐ Cost of Living - Current Consumer Price Index

**10a. ADDITIONAL BENEFITS**
- ☒ Children's Term Rider _____ 5 _____ Units ($1,000 per Unit)
- ☐ Family Term Rider _____ Units ($1,000 per Unit)
- ☒ Other Insured/Spouse $ 25,000 (Face Amount)

**11a. CHILDREN TO BE COVERED UNDER FAMILY OR CHILDREN'S RIDER**
(Show additional children & details in special request section of application)

| NAME | SEX | HEIGHT | WEIGHT | BIRTHDATE | AGE |
|---|---|---|---|---|---|
| CHILD | | | | | |
| CHILD | | | | | |
| CHILD | | | | | |
| CHILD | | | | | |
| CHILD | | | | | |

**2. DEATH BENEFIT OPTION** (Choose One)
- ☒ a. Accumulation Value included in Specified Amount
- ☐ b. Accumulation Value Payable plus Specified Amount

**3. PLANNED PERIODIC PREMIUMS**
- ☐ Annual  ☐ Semi-Annual  ☐ Quarterly
- ☒ Monthly PAC  ☐ List Bill-Group No.
- ☐ Govt. Allot  ☐ Single Premium
- a. MODAL PREMIUM AMOUNT $ 38.04
- b. ADDITIONAL PREMIUM (amount in excess of planned periodic premium)  $ _____
- INITIAL PREMIUM (a. plus b.)  $ 38.04
- AMOUNT SUBMITTED WITH APP  $ 42.69
- SEND PLANNED PERIODIC PAYMENT NOTICES...
  - ☐ YES  If Yes, ☐ Proposed Insured
  - ☒ NO  ☐ Applicant (Owner)
  - ☐ Other

a. Are there any children on whom coverage is not being requested?
- ☐ Yes  ☒ No

b. Are there any children shown above who do not live with the applicant?
- ☐ Yes  ☒ No

(If "YES", give name and reason in REMARKS on Agent's Report)

1003

14. BENEFICIARY - STATE FULL NAME AND RELATIONSHIP
Primary Insured's Beneficiary
LaWanda D Small          Wife
Contingent Beneficiary
Carl L. Small           HusBand
Other Insured/Spouses's Beneficiary
Nora  BATTS       wifes Mother
Contingent Beneficiary
NORa  BaTTS        WIFE'S MOTHER
BENEFICIARY FOR CHILDREN IS THE PRIMARY INSURED.

N.A.

15. OWNER (if other than the Person to be Insured)
☐ Individual    Full Name
☐ Corporation   Soc. Sec., Tax or Employer ID No.
☐ Partnership   Address
☐ Trustee
Billing Address (if different)

N.A.

16. OWNER OF POLICY ON A JUVENILE
a. If the applicant identified in Questions 1-8 on page 1 is a juvenile, complete the owner information below.
Relationship to Proposed Insured (Child)
If other than parent or grandparent, either a parent or guardian must sign this application in addition to the Applicant.
b. Parents name:                    Insurance in force:
Father
Mother
c. State the total amount of life insurance on each brother and sister of the child.
Name _____ Amount _____
Name _____ Amount _____
If more space required, answer in REMARKS.

N.A.

17. COMPLETE IF APPLYING AS A NON-SMOKER
                                              YES   NO
a. Has any person to be insured smoked cigarettes in the past year?                             ☐    ☐
Name(s)
b. Is tobacco other than cigarettes used by any person to be covered?                           ☐    ☐
Name(s)
Type/frequency

18. DRIVING RECORD
a. What is your driver's license no. ████████
State ____ CA ___
Within the past three years, has any person to be covered been convicted or pleaded guilty to:   YES   NO
b. Three or more moving violations and/or accidents?   ☐    ☒
c. Driving under the influence of alcohol and/or drugs?  ☐    ☒
Name
Details (give dates, type of violation)

19. FOREIGN TRAVEL, AVIATION AND MILITARY   YES   NO
a. Except for vacation trips, does any person to be covered intend to travel outside the U.S. or Canada within the next two years?                        ☐    ☒
b. Does any person to be covered intend to fly other than as a passenger or has he or she flown other than as a passenger during the past two years?         ☐    ☒
If "Yes" complete Aviation Questionnaire.
c. Is any person to be covered a member or does he or she intend to become a member of the armed forces including reserves?                             ☐    ☒
If "Yes", give details in REMARKS.

20. AVOCATION AND SPORTS                     YES   NO
Does any person to be covered participate in recreational activities involving:
a. Aeronautics (including hang gliding, ultra light, soaring, sky diving, ballooning)?                    ☐    ☒
Frequency: _____   Equipment: _____
Location/area: _____   Future participation: ___
b. Powered racing or competitive vehicles (including motorcycles, automobiles and motor boats)?         ☐    ☒
Type of vehicle: _____ Racing classification: ___
Speeds attained: _____ Maximum ____ Average
# Races annually: _____ Type of track: _____
c. Recreational vehicles over open terrain, trails, sand, snow or ice (including snowmobiles, dirt bikes and dune buggies)?                      ☐    ☒
Type of vehicle: _____ Where used? _____
Frequency: _____ Competitive racing? _____
If yes, specify engine size _____
d. Skin or scuba diving, mountain climbing, rodeos, competitive skiing?                          ☐    ☒
Frequency: _____ Location/area: _____
DIVING - Type of equipment: _____ Frequency ____
Maximum and average depths _____

21. OTHER INSURANCE                          YES   NO
a. Has any company declined to issue, reinstate, or renew, rated, modified, postponed or canceled any life or health insurance on any person to be covered?   ☐    ☒
b. Will insurance, including annuities, in any company be discontinued or changed if the insurance applied for is issued?                                  ☒    ☒  ΔS
c. Is any application for life or health insurance on any person to be covered pending in any other company?   ☐    ☒

22. LIFE INSURANCE IN FORCE WITH ALL COMPANIES
Proposed Insured

| Life | ADB | Dis. Income |
|------|-----|-------------|
| 15,000 | Yes | — |

Other Insured(s)

| | | |
|------|-----|-------------|
| 15000 | Yes | — |
| 5,000 | | |

(POLICY SCHEDULE CONTINUED)

POLICY NUMBER: ▮▮▮▮▮▮

| OTHER COVERAGES: | SPECIFIED AMOUNT | EFFECTIVE DATE | TERMINATION DATE |
|---|---|---|---|
| WAIVER OF MONTHLY PREMIUM..... | $38 | JULY 15, 1990 | JULY 15, 2022 |
| CHILDREN'S RIDER............. | 5.0 UNITS | JULY 15, 1990 | JULY 15, 2027 |

LEVEL TERM FOR COVERED INSURED

LAWANDA D SMALL $75,000 JULY 15, 1990 JULY 15, 2056
AGE AND SEX: 29 FEMALE
RISK CLASS: STANDARD

SURRENDER CHARGES

THE FOLLOWING SURRENDER CHARGES ARE BASED ON THE END OF THE POLICY YEAR:

| POLICY YEAR | AMOUNT | POLICY YEAR | AMOUNT |
|---|---|---|---|
| 1 | $1,200.00 | 2 | $1,200.00 |
| 3 | $1,200.00 | 4 | $1,200.00 |
| 5 | $1,200.00 | 6 | $1,200.00 |
| 7 | $1,200.00 | 8 | $1,200.00 |
| 9 | $600.00 | 10+ | $0.00 |

THE SURRENDER CHARGE WILL BE INCREASED DURING THE FIRST 10 YEARS BY
ANY EXCESS INTEREST CREDITED DURING THE 12 MONTHS PRECEDING THE
SURRENDER.

3A

POLICY SCHEDULE


NOTE:  THE MATURITY DATE IS THE POLICY ANNIVERSARY FOLLOWING THE
INSUREDS 95TH BIRTHDAY.  COVERAGE MAY EXPIRE PRIOR TO THE MATURITY
DATE IF NO PREMIUMS ARE PAID AFTER THE INITIAL PREMIUM OR IF
SUBSEQUENT PREMIUMS ARE INSUFFICIENT TO CONTINUE COVERAGE TO SUCH
DATE.  COVERAGE MAY ALSO BE AFFECTED BY A CHANGE IN CURRENT VALUES.


MONTHLY EXPENSE CHARGES:
        $7.50 PER POLICY PER MONTH, ALL POLICY YEARS

PERCENT OF PREMIUM EXPENSE CHARGES:
        0.0% OF ALL PREMIUMS

POLICY LOAN RATE:
        7.4% IN ADVANCE

CONSISTENT PREMIUM PAYMENT BASIS:
        $456.48


THE GUARANTEED INTEREST RATE USED IN CALCULATING THE ACCOUNT VALUE FOR
THE FIRST 5 YEARS IS .48676% PER MONTH, COMPOUNDED MONTHLY.  THIS IS
EQUIVALENT TO 6.0% PER YEAR COMPOUNDED YEARLY.  AFTER 5 YEARS, THE
GUARANTEED INTEREST RATE USED IS .32737% PER MONTH, COMPOUNDED
MONTHLY.  THIS IS EQUIVALENT TO 4.0% PER YEAR COMPOUNDED YEARLY.


INSURED: CARL L SMALL                    AGE AND SEX: 28 MALE
POLICY NUMBER: ▮▮▮▮▮                      CLASS:  STANDARD
INITIAL SPECIFIED AMOUNT: $75,000        POLICY DATE: JULY 15, 1990
DEATH BENEFIT OPTION: OPTION A           MONTHLY ANNIVERSARY DAY: 15
FIRST PREMIUM: $42.69                     MATURITY DATE: JULY 15, 2057
PLANNED PERIODIC PREMIUM: $38.04         PAYABLE: MONTHLY
OWNER AND BENEFICIARY: AS NAMED IN APPLICATION OR AS LATER CHANGED.
GROUP ID:


3

COMPLETE WITH RESPECT TO ALL PERSONS TO BE COVERED, AS SHOWN BELOW:

1. NAME AND ADDRESS OF YOUR FAMILY PHYSICIAN          ✗ (213) 5976870

2. DATE AND REASON FOR LAST VISIT TO YOUR PHYSICIAN

**COMPLETE QUESTIONS 3-7 CAREFULLY, GIVE DETAILS OF ALL "YES" ANSWERS, INCLUDING NAME OF PERSON AFFECTED, ALL DATES, DIAGNOSES, DURATIONS, OUTCOME AND THE NAMES AND ADDRESSES OF ALL HOSPITALS AND ATTENDING PHYSICIANS. IF ADDITIONAL SPACE REQUIRED, ATTACH SHEET OF PAPER, SIGNED, DATED AND WITNESSED.**

3. IS ANY PERSON TO BE COVERED PRESENTLY TAKING MEDICATION?

4. WITHIN THE PAST FIVE YEARS HAS ANY PERSON TO BE COVERED
   a. Consulted, been examined or been treated by any physician or practitioner?
   b. Had an x-ray, electrocardiogram or any laboratory test or study?
   c. Had observation or treatment at a clinic, hospital or sanitarium?
   d. Had or been advised to have a surgical operation?
   e. Had dizziness, shortness of breath, pain or pressure in the chest?
   f. Had any injury requiring treatment?

5. TO THE BEST OF YOUR KNOWLEDGE, HAS ANY PERSON TO BE COVERED HAD
   OR BEEN TOLD HE OR SHE HAD?
   a. Epilepsy, fainting spells, nervous or mental condition, neuritis, paralysis, or any disease or abnormality of the brain or nervous system?
   b. Heart attack, murmur, palpitation, or high blood pressure, anemia, varicose veins, or any disease or abnormality of the heart, blood or blood vessels?
   c. Tuberculosis, asthma, pleurisy, or any disease or abnormality of the lungs, bronchial tubes, throat or respiratory system?
   d. Ulcer, indigestion, colitis, gall stone, hernia or any disease or abnormality of the stomach, intestines, rectum, gall bladder or liver?
   e. Urinary sugar, albumin or stone, syphilis, menstrual disorder, or disease or abnormality of the breasts, kidneys, prostate, urinary or genital systems?
   f. Diabetes, gout, or any disease or abnormality of the thyroid or other glands?
   g. Arthritis, rheumatic fever, back trouble, or any disease or abnormality of the joints, muscles or bones?
   h. Any disease or abnormality of the eyes, ears or skin?
   i. Cancer or tumor?
   j. Any physical deformity or defect?
   k. Any immune deficiency disorders, Acquired Immune Deficiency Syndrome (AIDS), or AIDS Related Complex (ARC)?

6. WITHIN THE PAST TEN YEARS, HAS ANY PERSON TO BE COVERED REGULA[...]
   a. Amphetamines, barbiturates or sedatives, except as prescribed by a physician?
   b. Cocaine, heroin, morphine, LSD, marijuana, PCP, or any other hallucinogenic or narcotic drug?

7. a. Have any close relatives of any person to be covered ever had cancer, diabetes, heart disease, or a nervous or mental abnormality?
   b. Has any person to be covered ever received treatment or joined an organization for alcoholism or drug addiction?
   c. Is any person to be covered now pregnant?

REMARKS                                    *NONE*

HOME OFFICE CHANGES IN THIS APPLICATION   Contingent Beneficiary for Carlis Nora Battle, mother in law
Primary Beneficiary for LaWanda Small, Carl Small, Trustee, Contingent Beneficiary is Nora

LifeUSA INSURANCE COMPANY
BOX 59060
MINNEAPOLIS, MN 55459-0060

**ANNUAL REPORT TO POLICYHOLDER**
July 16, 1995
800-950-1962

INSURED: CARL L SMALL
POLICY :
POLICY DATE: 07-15-90
PLAN NAME: SECURITY PLANNER
REPORTING PERIOD: 07-15-94 TO 07-14-95

PLANNED PREMIUM: $  38.04
MODE: MONTHLY
CLASS: SMOKER
SEX: M  ISSUE AGE: 28

CARL L SMALL

2

## POLICY ACTIVITY AND STATUS DETAIL

| POLICY YR ENDING | PREMIUM PAID | INTEREST CREDITED | COST OF INSURANCE | COST OF | EXPENSE CHARGE | ADJUSTMENTS WITHDRAWALS | |
|---|---|---|---|---|---|---|---|
| 07-14-95 | $456.48 | $28.24 | $146.93 | | $90.00 | $0.00 | |

| | | |
|---|---|---|
| ACCUMULATION VALUE AT END OF LAST REPORTING PERIOD: | $ | 372.53 |
| ACCUMULATION VALUE AT END OF THIS REPORTING PERIOD: | $ | 465.40 |
| LOAN OUTSTANDING: | $ | 0.00 |
| NET CASH SURRENDER VALUE: | $ | 0.00 |

THE CURRENT CREDITED INTEREST RATE IS: 6.50% AND IS NOT SUBJECT TO FEDERAL OR STATE INCOME TAX
UNTIL WITHDRAWN.

YOUR CURRENT COVERAGE WILL REMAIN IN FORCE IF NO FURTHER PREMIUM IS PAID:
1) ASSUMING GUARANTEED INTEREST AND COST OF INSURANCE: 10/15/1995
2) ASSUMING CURRENT INTEREST AND COST OF INSURANCE:  10/15/1995

## CONSISTENT PREMIUM PAYMENT BONUS

BASED ON THE PAYMENTS YOU HAVE MADE TO DATE, YOUR POLICY IS ON SCHEDULE FOR PAYMENT OF THE
CONSISTENT PREMIUM PAYMENT AMOUNT.

The Consistent Premium Payment Provision is an increase to the Accumulation value of 45%
of the Consistent Premium Payment Basis shown on page 3 of your policy.  The increase is
applied from the eleventh through the ninety-fifth policy year.  The increase is applied to the
Accumulation Value in the same manner as a net premium.

**TO QUALIFY FOR THE CONSISTENT PREMIUM PAYMENT BONUS:** At the end of each policy year, beginning
with the eleventh, the cumulative total to date of any renewal premiums paid must equal or
exceed the number of renewal years since issue, times the Consistent Premium Payment Basis on
the policy schedule.

**INVESTMENT SAFETY:** ALL LifeUSA ASSETS ARE IN INVESTMENT-GRADE BONDS OR U.S. GOVERNMENT-
BACKED MORTGAGE-NO JUNK BOND-NO PRIVATE MORTGAGES.  LifeUSA'S INVESTMENT PORTFOLIO CONTINUES
TO BE ONE OF THE MOST LIQUID AND SECURE IN THE LIFE INSURANCE INDUSTRY.  ALL CLIENT DOLLARS ARE
INVESTED IN ASSETS RATED AAA/Aaa BY STANDARD AND POOR'S AND/OR MOODY'S.

**AGENT: PAUL W PFEIFFER**

**OFFICE:  14464**

I REPRESENT that the statements and answers given in this Application are true, complete, and correctly recorded to the best of my (our) knowledge and belief.

100 Stat

I AGREE that: (1) This Application shall consist of Part I and Part II (if applicable) and shall be the basis for any policy issued on this Application; (2) Except as otherwise provided in the conditional receipt, if issued, any policy issued on this Application shall not take effect unless all of the following conditions are met: (a) The first full premium is paid, (b) The policy is delivered to the owner during the lifetime of the person(s) to be covered by such policy, and (c) All of the statements and answers given in this Application to the best of my (our) knowledge and belief continue to be true and complete as of the date of delivery of the policy; (3) No agent or medical examiner may waive or alter a provision of any policy, and no waiver or modification of any policy issued on this Application shall be binding upon the Company unless in writing and signed by the President or a Vice President and the Secretary or an Assistant Secretary; (4) The Company may indicate changes in the space for Home Office Changes in the Application for administrative purposes only. Any other changes in this Application shall be subject to written consent by the owner.

I AUTHORIZE any physician, medical practitioner, hospital, clinic, medically related facility, insurance company, the Medical Information Bureau (MIB) or other organization, institution or person that has any information in its records on me or my children to give the Company, its legal representatives, and its reinsurers, any such information to use for underwriting insurance and for determining eligibility for benefits. The Company may release information obtained to MIB, reinsuring companies, other persons or organizations performing business or legal services in connection with my application or claim. The company may release information as required by law; or as I may authorize.

I UNDERSTAND AND AGREE to the following: (a) This authorization is valid for two and one-half years from this application date; (b) a photocopy is as valid as the original; and (c) a copy is available to the Person to be Insured on request.

I ACKNOWLEDGE receipt of the Notice of Insurance Information Practices. Will insurance, including annuities in any other company be discontinued or changed if the insurance applied for is issued?

☒ YES  ☐ NO    Name of company replaced: _American National_  Policy # _____

Signed at _Hawiian Garden, CA_    on ___ 6 / 10 / 90
(City and State)                                    Month   Day   Year

X _____
Proposed Insured's Signature

To be answered by Licensed Resident Agent:
To the best of your knowledge is replacement involved? ☒ YES ☐ NO

_____
Licensed Agent

Owner (if other than Insured)

Paul W. _____    Office
17900 ___    # 3719

X _____
Spouse/Other Insured Signature

X _____
Child Age 15 and Older



Box 59060
Minneapolis, Minnesota 55459-0060
612-546-7386

September 1, 1992

Dear LifeUSA Policy Owner:

The EXCELERATED DEATH BENEFIT is a new special policy feature which is now automatically available on your LifeUSA policy at no additional charge.

The EXCELERATED DEATH BENEFIT provides immediate access to policy benefits if the primary insured is diagnosed with a terminal illness and has a life expectancy of 12 months or less. In this event, you may elect to receive up to 50% of the policy face amount to a maximum of $125,000. You use the money as you see fit — there are no restrictions.

Eligiblity for the EXCELERATED DEATH BENEFIT is effective two years from the date of this letter, September 1, 1994.

If you need further information about the EXCELERATED DEATH BENEFIT — or if you have need in the future to file a claim — contact LifeUSA's Claims and Disbursements Department at 800-950-1962.

Please keep this letter with your LifeUSA policy as a reminder of this valuable benefit.

Sincerely,

Donald J. Urban
President
LifeUSA Insurance Company

# LifeUSA® Insurance Company

## INSURANCE ON CHILDREN
## RIDER

The Company has issued this rider as a part of the policy to which it is attached.

If a child dies before becoming 25 years old and before the policy anniversary following the Insured's age 65, we will pay the amount of insurance shown for this rider in the Policy Schedule subject to the provisions of this rider.

**Payment of Proceeds** — Any proceeds payable under this rider because of the death of a child will be paid to the Insured when we receive due proof of the death. However, upon request of the owner, the proceeds will be paid to a beneficiary other than the Insured, but only if:

1. the beneficiary change is made in accordance with the How to Change a Beneficiary provision of the policy; and

2. beneficiary change specifically states that it is applicable to insurance provided on a child under this rider.

Any monthly income payable because of the death of the Insured will be paid under a supplementary contract issued in exchange for this rider at the death of the Insured. In the absence of a specified beneficiary designation, such monthly income will be paid as it becomes due in equal shares to the then surviving children of the Insured including any children of the Insured who were not insured under this rider. Any payment due a minor will be paid to the legally appointed guardian of the minor. If there is no such guardian, we will pay the adult who has, in our opinion, assumed the custody and principal support of such minor. After becoming 21 years old, any child entitled to receive a share of the monthly income may elect to receive the commuted value of that share of such monthly income in one sum or apply the proceeds under one of the Settlement Provisions of the policy.

**Definitions** — In this rider:

"Insured" means the Insured under the policy to which this rider is attached.

"Child" means (1) any child named in the application for this rider who was born to the Insured, or is a stepchild or legally adopted child of the Insured, and who is at least 15 days old or becomes 15 days old, and who is not yet 19 years old on the date of the application, and (2) any child born to the Insured, stepchild or legally adopted child of the Insured, after the date of application for this rider, who is at least 15 days old or becomes 15 days old, and who is not yet 19 years of age.

"Unit" means an increment of $1,000 of death benefit per child.

**Paid-up Term Life Insurance** — If the Insured dies while this rider is in force, this rider automatically will be changed to nonparticipating paid-up term life insurance. A

policy will provide the amount of insurance for this rider on each child to that child's 25th birthday. The child will be the owner of each such policy.

**Conversion** — Insurance which terminates, except for nonpayment of premiums, under the provisions of this rider may be converted to any plan of insurance as follows:

1. Insurance on a child may be converted, without providing evidence of insurability, to a new policy up to five times greater than the amount of insurance provided on that child under this rider or $50,000, whichever is less, on the following dates:

   a. on that child's 25th birthday, or
   b. the policy anniversary following the Insured's age 65, whichever comes first; or
   c. within 90 days after the child marries or receives a Baccalaureate degree or higher degree from a fully accredited college or university, prior to the child's 25th birthday and prior to the policy anniversary nearest age 65 of the Insured.

2. Insurance on a child may be converted at any other time prior to the child's 25th birthday and prior to the policy anniversary nearest age 65 of the Insured. The face amount of the new policy may not be greater than the amount of insurance provided on that child under this rider.

3. Written request for conversion of any terminating insurance and payment of the required premium must be made to us before, or within 31 days after, the date allowed for conversion. The terminating insurance will not be in force during the 31-day period following the date allowed for conversion.

4. The face amount of each new policy may not be less than our published minimum for the plan selected nor greater than five times the amount of insurance of this rider. At least one plan will be available for conversion of $1,000 of insurance.

5. Each new policy will be effective on the date of conversion. The child will be the owner of the new policy.

6. The premium for each new policy will be at our published rate for the plan selected at the time of conversion. We will use the age of the child insured on the date of conversion to determine this rate.

7. The date of issue of all new policies issued under the Conversion provision will be the date of issue of this rider. The incontestability and Suicide periods in the new policies will continue from such dates of issue and

PR1005

will not start anew in the new policies.

**Automatic Termination** — This rider will automatically terminate:
1. if any premium remains unpaid after the grace period;
2. if the policy is surrendered;
3. if the policy terminates;
4. on the policy anniversary following the insured's age 65; or
5. at the death of the insured subject to the provisions for paid-up term life insurance.

Insurance on a child under this rider will automatically terminate on such child's 25th birthday or when such child converts all or part of such insurance.

**Reinstatement** — In addition to the provisions of the policy relating to reinstatement, this rider may be reinstated only if each child continues to be insurable by our standards.

**Incontestability** — In applying the provisions of the policy relating to incontestability to this rider, the "date of issue" will be the date this rider is signed by us. Any paid-up term life insurance issued under this rider will be incontestable from its date of issue.

**Suicide** — In applying the provision of the policy relating to suicide to this rider, the "date of issue" will be the date this rider is signed by us. The provisions of the policy relating to suicide will apply to the death by suicide of the insured or a child. If the insured dies by suicide and our liability is limited to the amount of the premiums paid, no insurance will be provided under the paid-up term life insurance provision of this rider. Instead, insurance on each child may be converted to any plan of insurance then offered by us. Such conversion will be subject to the conversion provisions of this rider.

**Cancellation** — Upon written request by the owner of the policy, this rider may be cancelled on any monthly anniversary day.

**No Dividends Are Payable** — This rider does not participate in our profits or surplus.

**Consideration** — We have issued this rider in consideration of the application and payment of the premiums. A copy of the application is attached to the policy. The premium for this rider is payable as provided in the policy, except that such premium will no longer be payable when this rider terminates.

**Rider Date** — The rider date of this rider will be the date shown on the Policy Schedule.

Signed for the Company at Minneapolis, Minnesota and effective on the date the policy is issued unless a different effective date is shown here.

*Joseph W. Carlson*
Secretary

*Daniel J. Rourke*
President

# Life**USA**® Insurance Company

## WAIVER OF PLANNED PERIODIC PREMIUM
### RIDER

The Company has issued this rider as a part of the policy to which it is attached.

**Waiver Benefit** — We will waive each planned periodic premium due immediately on or after age 10 of the Insured during the Insured's total disability. Such waiver will be limited to the average planned periodic premium paid during the past three years. If the policy has been in force less than three years, waiver will be limited to the average planned premium payments made from the policy date. The waiver is subject to the provisions of this rider.

Any planned periodic premium waived under this rider will be credited to the Accumulation Value of this policy. We will credit the Accumulation Value as of the date of notice of claim or the date at the end of the first six months of disability, whichever is later.

**Total Disability** — Disability will be total when the Insured becomes so disabled by injury or disease, which first appears after the date this rider is signed by us, as to be unable to perform any of the material duties of any gainful work for which the Insured is, or becomes, fitted by reason of education, training or experience. Total disability is called "such disability" in this rider.

The beginning of such disability will be the beginning of the disability which totally disables the Insured for not less than six months. In no event will such disability be considered to have begun more than one year before the date due proof of such disability is received by us.

**Age Limitations** — No waiver will be allowed under this rider during any period of disability before the Insured's 10th birthday. If such disability continues beyond the 10th birthday, we will waive each such deduction due after that birthday and during such disability. No waiver will be allowed under this rider if such disability begins after policy anniversary nearest age 60 of the Insured.

**Exclusion from Coverage** — No benefits will be allowed under this rider if such disability results directly or indirectly from:
1. intentionally self-inflicted injury;
2. participation in insurrection; or

3. war, declared or undeclared, or any act of war.

**Automatic Termination** — This rider will automatically terminate:
1. if the policy is surrendered;
2. if the policy lapses, or
3. at the policy anniversary following the Insured's age 60, subject to any claims under this rider.

**Notice and Proof of Disability** — Written notice of such disability must be given to us at our Home Office while the Insured is living and while such disability continues. Failure to give such notice will not invalidate any claim if such notice was given as soon as was reasonably possible. Due proof of such disability must be given to us at our Home Office. Although proof of such disability may have been accepted by us as satisfactory, the Insured will at any time, when we request it, furnish due proof of the continuance of such disability. At our option, such proof may include an examination of the Insured by a medical examiner chosen by us. Such proof will not be required by us more than once each year after such disability has continued for two full years.

**Recovery from Disability** — The benefits provided by this rider will end: (1) if the Insured fails to give us any due proof or refuses to submit to the requested examination; or (2) if the Insured is no longer totally disabled.

**Cancellation** — Upon written request by the owner, this rider may be cancelled on any monthly anniversary day.

**No Dividends are Payable** — This rider does not participate in our profits or surplus.

**Consideration** — We have issued this rider in consideration of the application and payment of the initial premium shown in the Policy Schedule. A copy of the application is attached to the policy. The rate for this rider is shown in the Policy Schedule and is payable as provided in the policy except that when this rider terminates such rate will no longer be payable. The monthly deduction for this rider will be determined by the same method used to determine the monthly deduction for the policy to which this rider is attached.

Signed for the Company at Minneapolis, Minnesota and effective on the date the policy is issued unless a different effective date is shown here.

*Joseph W. Carlson*
Secretary

*Daniel J. Rourke*
President

PR1007

## THE BENEFICIARY

**Who Receives the Death Benefit** — We will pay the Death Benefit to the Beneficiary when the Insured dies. The Beneficiary is the person or entity named in the application unless changed.

**Protection of the Death Benefit** — To the extent permitted by law, the Death Benefit will not be subject to the claims of the Beneficiary's creditors.

**If the Beneficiary Dies** — If any Beneficiary dies before the Insured, that Beneficiary's interest in the Death Benefit will end. If any Beneficiary dies at the same time as the Insured, or within 30 days after the Insured, that Beneficiary's interest in the Death Benefit will end.   If the interest of all

named beneficiaries has ended when the Insured dies, we will pay the Death Benefit to you. If you are not living at that time, we will pay the Death Benefit to the executor or administrator of your estate.

**How to Change a Beneficiary** — You may change the named Beneficiary by sending a satisfactory written notice to us. The change will not be effective until we record it at our Home Office. Even if the Insured is not living when we record the change, the change will take effect as of the date signed. Any benefits we pay before we record the change will not be affected. An irrevocable Beneficiary must give written consent before we will change that Beneficiary.

## PAYMENT OF THE DEATH BENEFIT

**Proof of Death** — We will pay any benefit payable at death when we receive due proof of the Insured's death. We will send appropriate forms to the Beneficiary upon request. Any of our agents will help the Beneficiary fill out the forms without charge. We will send all payments from our Home Office.

**Death Benefit** — The Death Benefit may be affected by the Policy Loan or Misstatement of Age or Sex provisions.

**Death Benefit Option** — The Death Benefit is based on your choice of Option A or Option B as shown in the Policy Schedule.

**Option A:** The Death Benefit will be the greater of the specified amount shown on the Policy Schedule or the Death Benefit Factor times the Accumulation Value as of

the Date of the Insured's death.

**Option B:** The Death Benefit will be the greater of the specified amount shown on the Policy Schedule plus the Accumulation Value as of the date of the Insured's death or the Death Benefit Factor times the Accumulation Value as of the date of the Insured's death.

In no event will the Death Benefit be less than the amount needed to continue to qualify the policy as a life insurance contract under Section 7702 of the Internal Revenue Code. Future amendments may be necessary for continued compliance. We will notify you of any amendment.

We will reduce the Death Benefit by any Policy Loans and by the grace period premium necessary to provide insurance to the date of the Insured's death.

## DEATH BENEFIT FACTORS

| Insured's Attained Age | Death Benefit Factor | Insured's Attained Age | Death Benefit Factor | Insured's Attained Age | Death Benefit Factor |
|---|---|---|---|---|---|
| 40 and below | 2.50 | 60 | 1.30 | 80 | 1.05 |
| 41 | 2.43 | 61 | 1.28 | 81 | 1.05 |
| 42 | 2.36 | 62 | 1.26 | 82 | 1.05 |
| 43 | 2.29 | 63 | 1.24 | 83 | 1.05 |
| 44 | 2.22 | 64 | 1.22 | 84 | 1.05 |
| 45 | 2.15 | 65 | 1.20 | 85 | 1.05 |
| 46 | 2.09 | 66 | 1.19 | 86 | 1.05 |
| 47 | 2.03 | 67 | 1.18 | 87 | 1.05 |
| 48 | 1.97 | 68 | 1.17 | 88 | 1.05 |
| 49 | 1.91 | 69 | 1.16 | 89 | 1.05 |
| 50 | 1.85 | 70 | 1.15 | 90 | 1.05 |
| 51 | 1.78 | 71 | 1.13 | 91 | 1.04 |
| 52 | 1.71 | 72 | 1.11 | 92 | 1.03 |
| 53 | 1.64 | 73 | 1.09 | 93 | 1.02 |
| 54 | 1.57 | 74 | 1.07 | 94 | 1.01 |
| 55 | 1.50 | 75 | 1.05 | | |
| 56 | 1.46 | 76 | 1.05 | | |
| 57 | 1.42 | 77 | 1.05 | | |
| 58 | 1.38 | 78 | 1.05 | | |
| 59 | 1.34 | 79 | 1.05 | | |

## PREMIUMS

Subject to the Premium Limitation provision and the following conditions, we will accept any payment you send to us while this policy is in force.

1. You may pay the first premium to our authorized representative. You may send subsequent premiums to our Home Office or you may pay them to an agent or cashier we authorize. We will give you a receipt if you ask for one.

2. You may pay premiums at any time, but only if each premium is at least $25. Premiums paid by payroll deduction are excepted.

3. To qualify for the Consistent Premium Payment Provision, you must submit the Consistent Premium Payment Basis stated in the Policy Schedule. You must abide strictly by the conditions in the Consistent Premium Payment Provision section.

**Premium Limitation** — Any premium received during a policy year which is more than three times the greater of the Consistent Premium Payment Basis or three times the total of the monthly deductions for the last year may be refunded. We may also refund any unscheduled premiums that exceed $25,000 in any twelve month period.

We will not refund any amount if doing so would cause your policy to lapse before the next monthly anniversary day.

We will apply any refund first toward reduction of any outstanding loan.

We will remove the excess premium at the end of any policy year if the premiums paid exceed the amount allowable for the Death Benefit to qualify for federal income tax exclusion. Interest will be paid on the amount removed to the end of that policy year. We will refund this excess amount (including interest) within 60 days after the end of that policy year.

**Continuation of Insurance** — Subject to the Grace Period provision, your policy will continue between premium payments at the same face amount plus additional benefits provided by Rider. Refer to the Monthly Deduction section for further explanation.

**Grace Period** — A grace period is a period of 61 days after which either of the following has occurred:

1. The Accumulation Value minus any loan is less than the monthly deduction due.

2. On a monthly anniversary date, the sum of the premium paid to date is less than one-twelfth of the Planned Periodic Premium on an annual basis times the number of elapsed policy months reduced by the surrender charge and any outstanding policy loan.

We will notify you before the 61 days have passed that the grace period has begun. You must then pay a premium large enough to keep the policy in force. If you do not pay enough premium, your policy will lapse.

We will subtract the premium necessary to provide coverage to the date of death if the Insured dies during the grace period.

**Reinstatement of Lapsed Policy** — Unless this policy was surrendered, it may be reinstated after lapse. To reinstate the policy, you must meet the following conditions.

1. You must request reinstatement in writing within three years from the date of lapse and before the Insured's age 95.

2. The Insured must still be insurable by our standards.

3. If any loans existed when the policy lapsed, you must repay or reinstate them with interest at the reinstatement interest rate shown in the Policy Schedule.

4. You must pay a premium large enough to cover the two monthly deductions due when the policy lapsed and three monthly deductions due when the policy is reinstated.

The Accumulation Value of the reinstated policy will be any loan repaid, plus 100% of any premium you pay at reinstatement, minus the monthly deductions due at the time of lapse.

**Consistent Premium Payment Provision** — The Consistent Premium Provision is an increase to the Accumulation Value of 45% of the Consistent Premium Payment Basis. It is our intent to credit the Accumulation Value with this increase on each policy anniversary beginning with the eleventh. However crediting of such an amount is not guaranteed.

If the Company does credit such increases, your Accumulation Value will be increased if the following condition is met.

1. At the end of each of the policy years beginning with the eleventh, the cumulative total to date of any renewal premiums paid must equal or exceed the number of renewal years since issue times the Consistent Premium Payment Basis on the Policy Schedule.

These increases will terminate either at our option or when the policy terminates. Any increases previously credited will not be affected by such termination.

## POLICY CHANGES

**Changes in Specified Amount** — Subject to the following conditions, you may request a change in the Insured's specified amount after the first policy anniversary.

1. Specified Amount Decreases

   Any decrease will become effective on the monthly anniversary day that falls on or next follows receipt of request. Any such decrease will reduce insurance in the following order:
   (a) insurance provided by the most recent increase;
   (b) the next most recent increases successively; and
   (c) insurance provided under the original application.

2. Specified Amount Increases

   Any request for an increase must be applied for on a supplemental application. Such increase shall be subject to evidence of insurability satisfactory to us.

No increase is allowed unless the net cash value is sufficient to cover the next monthly deduction.

**Change in Death Benefit Option** — You may request a change in the death benefit option in effect after the first policy anniversary. The request must be in a written form acceptable to us. Subject to the following, the effective date of the change will be the monthly anniversary day that falls on or next follows the date we receive your request.

1. If the change is from Option A to Option B, the Insured's death benefit after such change shall be equal to the Insured's death benefit before such change less the account value on the date of change.

2. If the change is from Option B to Option A, the Insured's death benefit after such change shall be equal to the Insured's death benefit before such change.

## GUARANTEED VALUES

**Accumulation Values** — The Accumulation Value on any specified date is equal to:

1. The Accumulation Value on the last monthly anniversary day plus accrued interest from that date to the specified date.

plus 2. All net premiums paid plus accrued interest from the date of receipt to the specified date less any refunds since the last monthly anniversary day.

minus 3. Any partial surrenders since the last monthly anniversary day.

**Interest Rates** — The guaranteed minimum interest rate is 6% for the first 5 policy years, and 4% thereafter.

We may declare a higher interest rate than the guaranteed minimum rate at any time. We may change this higher rate at our option. We will never declare a rate lower than the guaranteed minimum interest rate.

We will pay interest on any part of the Accumulation Value securing a Policy Loan. The excess rate may be lower than the rate credited to the unborrowed portion of the Account Value.

**Monthly Deduction Rates** — We will determine the monthly deduction rate for each policy year at the beginning of that year. We will use the Insured's age as of that policy year.

A Table of Guaranteed Maximum Monthly Mortality Cost Charges is shown on page 11. We may use rates lower than these monthly deduction rates. We will never use higher rates.

A reduction in the guaranteed monthly deduction rate for this policy will also apply to all other policies issued on the same plan and to the same class of insured. The reduced rate will not be affected by any change in the Insured's health or occupation.

**Monthly Deduction** — We will take the monthly deduction for the prior month from the Accumulation Value at the end of each policy month.

The Monthly Deduction is equal to
   (a) the monthly deduction rate times the difference between the Death Benefit and the Accumulation Value at the beginning of the month,

plus (b) the monthly deduction for any Riders,

plus (c) the monthly expense charge as shown in the Policy Schedule.

 Box 59060
Minneapolis, Minnesota 55459-0060
612-546-7386   FAX (612) 546-1127

Daniel J. Rourke, CLU
President

# WELCOME TO LifeUSA

*America's Premier Producer -Owned Life Insurance Company*

All of us at LifeUSA appreciate your business and are happy to have you as a policyholder.  Our goal is to provide you with outstanding policy benefits and service.  You are the owner of a modern, flexible premium policy which provides adjustable life insurance coverage.  This means that your policy can be changed or adjusted as your insurance or savings needs change.

A special feature of your policy is the innovative consistent Premium Bonus. This benefit is designed to reward long term policyholders by crediting bonus cash accumulations to your policy beginning in the 11th year if all renewal planned periodic premiums have been paid.

LifeUSA is a unique life insurance company in that the agent who sold you the policy and the people in our office who provide you with service, are part owners of the company.  As direct shareholders in LifeUSA, your professional agent and our experienced Home Office staff are joined together and motivated to provide you with the best products and service available today!

Thank you for the confidence you have shown in LifeUSA.  We look forward to serving you in the years ahead.  If you have any questions about your new policy or have any requests for service, please contact your agent or call LifeUSA's toll-free number 1-800-950-1962.

Sincerely,

LifeUSA INSURANCE COMPANY

Daniel J. Rourke, CLU
President

NB1009 CA

## BASIS OF COMPUTATION

The Cash Values of the policy will not be less than the minimum values required by the State where the policy is delivered. The guaranteed monthly deduction rates and the guaranteed interest rate are the basis for the Cash Values.

Calculation of minimum Cash Values and nonforfeiture benefits is based on the Commissioners 1980 Standard

Ordinary Smoker/Nonsmoker Ultimate Mortality Tables' for males and females, age last birthday and 6% interest. Death is assumed to occur at the end of the policy year.

We have filed the method we used to compute minimum Cash Values and nonforfeiture benefits with the Supervisory Official of the State of policy delivery.

## SETTLEMENT PROVISIONS

When the Insured dies, we will pay the death benefit in a lump sum unless you or the beneficiary choose a settlement option. You may choose a settlement option while the Insured is living. The beneficiary may choose a settlement option after the Insured has died.

You may also choose one of these options as a method of receiving the surrender or maturity proceeds if any are available under this policy. If the beneficiary is not an individual, Home Office approval is required.

When we receive a satisfactory written request, we will apply the benefit according to one of these options:

**OPTION A: Installments for a Guaranteed Period** — We will pay equal installments for a guaranteed period of one to thirty years. Each installment will consist of part benefit and part interest. We will pay the installments as requested either monthly, quarterly, semi-annually or annually. See Table A.

**OPTION B: Installments for Life with a Guaranteed Period** — We will pay equal monthly installments as long as the payee is living, but we will not make payments for less than the guaranteed period the payee chooses. The guaranteed period may be either ten or twenty years. We will pay the installments monthly. See Table B.

**OPTION C: Benefit Deposited with Interest** — We will hold the benefit on deposit. It will earn interest at such interest rate as we declare, but not less than 4% annually. We will pay the earned interest as requested either monthly, quarterly, semi-annually or annually. The payee may withdraw part or all of the benefit and earned interest

at any time.

**OPTION D: Installments of a Selected Amount** — We will pay installments of a selected amount until we have paid the entire benefit and accumulated interest.

**OPTION E: Annuity** — We will use the benefit as a single premium to buy an annuity. The annuity may be payable to one or two payees. It may be payable as requested for life with or without a guaranteed period. The annuity payment will not be less than our current annuity contracts are then paying.

The payee may arrange any other method of settlement as long as we agree to it. The payee must be an individual receiving payment in his or her own right. There must be at least $1,000 available for an option and each installment to each payee must be at least $25. If the benefit is not enough to meet these requirements, we will pay the benefit in a lump sum.

We will pay the first installment under any option as of the date of death, maturity, or surrender. Any unpaid balance we hold under Options A, B, D will earn interest at the rate we are paying at the time of the settlement. We will not pay less than 4% annual interest.

If the payee does not live to receive all guaranteed payments under Options A, B, D or E or any amount deposited under Option C, plus any accumulated interest, we will pay the remaining benefit to the payee's estate. The payee may name and change a successor payee for any amount we would otherwise pay the payee's estate.

8

## TABLE A
### INSTALLMENTS FOR EACH $1000 PAYABLE UNDER OPTION A

| Guarantee Period | Monthly Installments | Guarantee Period | Monthly Installments | Guarantee Period | Monthly Installments |
|---|---|---|---|---|---|
| 1 | $84.84 | 11 | 9.31 | 21 | 5.81 |
| 2 | 43.25 | 12 | 8.69 | 22 | 5.64 |
| 3 | 29.40 | 13 | 8.17 | 23 | 5.49 |
| 4 | 22.47 | 14 | 7.72 | 24 | 5.35 |
| 5 | 18.32 | 15 | 7.34 | 25 | 5.22 |
| 6 | 15.56 | 16 | 7.00 | 26 | 5.10 |
| 7 | 13.59 | 17 | 6.71 | 27 | 5.00 |
| 8 | 12.12 | 18 | 6.44 | 28 | 4.90 |
| 9 | 10.97 | 19 | 6.21 | 29 | 4.80 |
| 10 | 10.06 | 20 | 6.00 | 30 | 4.72 |

Multiply Monthly Installment by 11.78696 for Annual, by 5.95127 for Semi-Annual, or by 2.99022 for Quarterly Installments.

## TABLE B
### MONTHLY INSTALLMENTS FOR EACH $1000 PAYABLE UNDER OPTION B

| Age | Male Payee Guarantee Period 10 Years | 20 Years | Female Payee Guarantee Period 10 Years | 20 Years | Age | Male Payee Guarantee Period 10 Years | 20 Years | Female Payee Guarantee Period 10 Years | 20 Years |
|---|---|---|---|---|---|---|---|---|---|
| 11 | $2.90 | $2.89 | $2.83 | $2.83 | 51 | 4.44 | 4.26 | 4.10 | 4.02 |
| 12 | 2.91 | 2.91 | 2.84 | 2.84 | 52 | 4.53 | 4.32 | 4.17 | 4.08 |
| 13 | 2.93 | 2.92 | 2.86 | 2.85 | 53 | 4.62 | 4.39 | 4.25 | 4.14 |
| 14 | 2.94 | 2.94 | 2.87 | 2.87 | 54 | 4.71 | 4.46 | 4.33 | 4.21 |
| 15 | 2.96 | 2.96 | 2.88 | 2.88 | 55 | 4.81 | 4.52 | 4.42 | 4.28 |
| 16 | 2.98 | 2.97 | 2.90 | 2.90 | 56 | 4.92 | 4.59 | 4.51 | 4.35 |
| 17 | 3.00 | 2.99 | 2.91 | 2.91 | 57 | 5.03 | 4.66 | 4.61 | 4.42 |
| 18 | 3.01 | 3.01 | 2.93 | 2.93 | 58 | 5.15 | 4.73 | 4.71 | 4.50 |
| 19 | 3.03 | 3.03 | 2.95 | 2.94 | 59 | 5.27 | 4.80 | 4.82 | 4.57 |
| 20 | 3.05 | 3.05 | 2.96 | 2.96 | 60 | 5.40 | 4.87 | 4.94 | 4.65 |
| 21 | 3.08 | 3.07 | 2.98 | 2.98 | 61 | 5.53 | 4.94 | 5.06 | 4.72 |
| 22 | 3.10 | 3.09 | 3.00 | 2.99 | 62 | 5.68 | 5.00 | 5.19 | 4.80 |
| 23 | 3.12 | 3.11 | 3.02 | 3.01 | 63 | 5.83 | 5.07 | 5.33 | 4.88 |
| 24 | 3.14 | 3.14 | 3.04 | 3.03 | 64 | 5.98 | 5.13 | 5.47 | 4.95 |
| 25 | 3.17 | 3.16 | 3.06 | 3.05 | 65 | 6.15 | 5.18 | 5.63 | 5.02 |
| 26 | 3.20 | 3.19 | 3.08 | 3.07 | 66 | 6.32 | 5.24 | 5.79 | 5.09 |
| 27 | 3.22 | 3.21 | 3.10 | 3.10 | 67 | 6.50 | 5.28 | 5.96 | 5.15 |
| 28 | 3.25 | 3.24 | 3.12 | 3.12 | 68 | 6.68 | 5.33 | 6.14 | 5.21 |
| 29 | 3.28 | 3.27 | 3.15 | 3.14 | 69 | 6.88 | 5.36 | 6.33 | 5.27 |
| 30 | 3.31 | 3.30 | 3.17 | 3.17 | 70 | 7.07 | 5.40 | 6.53 | 5.32 |
| 31 | 3.34 | 3.33 | 3.20 | 3.19 | 71 | 7.27 | 5.42 | 6.73 | 5.36 |
| 32 | 3.38 | 3.36 | 3.23 | 3.22 | 72 | 7.48 | 5.45 | 6.94 | 5.40 |
| 33 | 3.41 | 3.39 | 3.26 | 3.25 | 73 | 7.68 | 5.46 | 7.16 | 5.43 |
| 34 | 3.45 | 3.43 | 3.29 | 3.28 | 74 | 7.88 | 5.48 | 7.38 | 5.45 |
| 35 | 3.49 | 3.46 | 3.32 | 3.31 | 75 | 8.08 | 5.49 | 7.60 | 5.47 |
| 36 | 3.53 | 3.50 | 3.35 | 3.34 | 76 | 8.27 | 5.50 | 7.82 | 5.48 |
| 37 | 3.57 | 3.54 | 3.39 | 3.37 | 77 | 8.46 | 5.50 | 7.82 | 5.48 |
| 38 | 3.62 | 3.58 | 3.42 | 3.41 | 78 | 8.63 | 5.51 | 8.25 | 5.50 |
| 39 | 3.67 | 3.62 | 3.46 | 3.44 | 79 | 8.79 | 5.51 | 8.45 | 5.51 |
| 40 | 3.72 | 3.67 | 3.50 | 3.48 | 80 | 8.94 | 5.51 | 8.64 | 5.51 |
| 41 | 3.77 | 3.71 | 3.54 | 3.52 | 81 | 9.07 | 5.51 | 8.82 | 5.51 |
| 42 | 3.82 | 3.76 | 3.59 | 3.56 | 82 | 9.18 | 5.51 | 8.97 | 5.51 |
| 43 | 3.88 | 3.81 | 3.63 | 3.60 | 83 | 9.28 | 5.51 | 9.11 | 5.51 |
| 44 | 3.94 | 3.86 | 3.68 | 3.65 | 84 | 9.36 | 5.51 | 9.23 | 5.51 |
| 45 | 4.00 | 3.91 | 3.73 | 3.69 | 85 | 9.42 | 5.51 | 9.32 | 5.51 |
| 46 | 4.07 | 3.97 | 3.78 | 3.74 | | | | | |
| 47 | 4.14 | 4.02 | 3.84 | 3.79 | | | | | |
| 48 | 4.21 | 4.08 | 3.90 | 3.85 | | | | | |
| 49 | 4.28 | 4.14 | 3.96 | 3.90 | | | | | |
| 50 | 4.36 | 4.20 | 4.03 | 3.96 | | | | | |

Ages younger than 11 are the same as for age 11, and ages older than 85 are the same as shown for age 85.

## GENERAL PROVISIONS

**Annual Report** — We will send you a report at least once a year which shows the premium payments, expense charges, interest credited, mortality charges, and partial surrenders since the last report. It will also show any outstanding loans, the current account value, and current net cash value.

**Projection of Benefits** — If you send us a written request, we will furnish you a report which shows future benefits and values. The report will assume your specified amount, type of death benefit option, interest rate and future premium payments. We may specify other assumptions as necessary. You may request one report free each year. Additional reports will not cost more than $25 each.

**Incontestability of the Policy** — This policy will be incontestable after it has been in force during the Insured's lifetime for two years from the Policy Date. This provision does not apply to any Rider providing benefits specifically for disability or death by accident.

**Amount We Pay is Limited in the Event of Suicide** — We will be liable only for the premiums paid, less any partial surrenders, if the insured dies by suicide while sane or insane within one year from the Policy Date.

**Misstatement of Age or Sex in the Application** — If there is a misstatement of the Insured's age or sex in the policy, we will adjust the excess of the Death Benefit over the Accumulation Value to that which the most recent monthly deduction would purchase at the correct age or sex.

**The Contract Consists of the Policy and the Application** — We have issued this policy in consideration of the application and premium payments. A copy of the application is attached and is a part of this policy. The policy and the application together are the entire contract. All statements made by or for the insured are considered representations and not warranties. No statements other than those contained in the application will be used to void the policy or defend a claim.

**Who Can Make Changes in the Policy** — Only our President or a Vice President together with our Secretary have the authority to make any changes in this policy. Any change must be in writing.

**Assignment of the Policy** — You may assign or transfer all or specific rights of your policy. No assignment will be effective until you notify us in writing. We will record your assignment. We will not be responsible for its validity or effect.

**Death of the Owner** — If you die before the Insured, your rights will pass to the executor of your estate unless ownership has been otherwise assigned.

**Termination of Insurance** — This policy will terminate at the earliest of:

a. the date of surrender;
b. the policy anniversary following the Insured's age 95; or
c. the date of lapse.

**No Dividends are Payable** — This is nonparticipating insurance. It does not participate in our profits or surplus. We do not distribute past surplus or recover past losses by changing the monthly deduction rates.

**Notice** — Any notice given under the provisions of this policy will be sent to your last known address and to any assignee of record.

# Flexible Premium Adjustable Life Policy

▸ Death Benefit payable to the Beneficiary upon death of the Insured before age 95. Net Cash Value paid to the Owner at the Insured's age 95. Nonparticipating - No annual dividends.

Signed for the Company at its Home Office on the date of issue.

*Joseph W. Carlson*          *Daniel J Rourke*
Secretary                       President

YOUR 20 DAY RIGHT TO EXAMINE YOUR POLICY
You may return your policy within 20 days after receiving it if dissatisfied for any reason. You may return it to the agent of our Home Office. We will void the policy and mail your refund within 10 days of receipt.

This is a legal contract between you and the Company.

**READ YOUR POLICY CAREFULLY**



**LifeUSA**® Insurance Company
Box 59060
Minneapolis, Minnesota 55459-0060

"A Stock Company"

## DEFINITIONS

**We, our, us,** or **The Company** means LifeUSA Insurance Company.

**You** and **your** means the owner of this policy named in the application, unless later changed. The owner may be other than the person(s) issured. The owner is solely entitled to exercise all policy rights.

**Insured** means the person or persons whose life is insured under this Policy.

**Accumulation Value** is the policy's total value. It is described in the Accumulation Values section.

**Age** means the Insured's age on the last birthday.

The **Beneficiary** is the person or entity to whom we will pay the Death Benefit if the Insured dies.

**Cash Value** means the accumulation value less any surrender penalty.

**Lapse** means termination of the policy due to either insufficient Cash Value or insufficient premium payment to cover the monthly deduction.

A **Policy Loan** is the indebtedness to us for a loan secured by this policy.

The **Maximum Loan Value** is the largest amount you may borrow under the loan provision.

The **Net Cash Value** is the Cash Value less any remaining loan balance.

The **Net Premium** is 100% of any premium you pay.

**Reinstate** means to restore coverage after the policy has lapsed.

A **Rider** is an attachment to the policy that provides an additional benefit.

The **Policy Date** is shown in the Policy Schedule and determines the monthly anniversary day, policy anniversaries, and policy years. Insurance is effective as shown on the Application.

## GUIDE TO POLICY PROVISIONS

Accumulation Values ............................ 6

Application ..................................... 10

Beneficiary's Rights ............................ 4

Cash Value ..................................... 7

Change of Beneficiary ........................... 4

Consistent Premium Payment Provision ........... 5

Death Benefit .................................. 4

Definitions .................................... 2

General Provisions ............................. 10

Guaranteed Values ............................. 6

Grace Period ................................... 5

Misstatement of Age ........................... 10

Ownership Provision ............................ 2

Payment of Cash Values and Loans ............... 7

Payment of Death Benefit ....................... 4

Policy Changes ................................. 6

Policy Loans ................................... 7

Policy Schedule ................................ 3

Premiums ...................................... 5

Reinstatement of Lapsed Policy ................. 5

Settlement Provisions .......................... 8

Surrender Option ............................... 7

Table of Guaranteed Mortality Rates ........... 11

Table of Surrender Penalties ................... 3

# Life**USA**® Insurance Company

Box 59060

Minneapolis, Minnesota 55459-0060

(612) 546-7386

Adjustable Life Insurance
Flexible Premiums Payable During
Life of Insured to Age 95

Nonparticipating — No Annual Dividends

P1100

R-1/89